[Crim. No. 19. Fifth Dist. Dec. 27, 1961.]

THE PEOPLE, Plaintiff and Appellant, v. FLORENCE ADELINE WESTFALL, Defendant and Respondent.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Appellant.

Walter C. Hancock, Public Defender, and William R. Lundgren, Deputy Public Defender, for Defendant and Respondent.

STONE, J.—This is an appeal by the People from an order setting aside a grand jury indictment of defendant for the crime of child abandonment. The macabre facts are these: Dora Louise Westfall, the 16-year-old daughter of defendant, gave birth to a child June 16, 1961. Defendant and Dora's sister assisted in the delivery of the baby. Defendant wrapped the child in a sheet and took it to a garage at the home of a Mrs. Champion in Modesto. Upon discovering the child lying on a cot in her garage, Mrs. Champion notified the authorities, who rushed the baby to a hospital, where it died June 18. Mrs. Champion had never seen the child before, she had no idea where it came from, nor who had left it at her home.

On June 22, defendant was interviewed by the police and gave a statement which, in substance, was that her daughter, Dora, had given birth to a baby about 4 o'clock on June 16; that defendant had cut the umbilical cord, tied it, washed the baby, wrapped it in a sheet and put it in the garage of Mrs. Champion. Defendant also stated that she did not know who occupied the house where she left the baby, or whether anyone lived there. She related that she simply made up her mind to leave the baby at the first place that looked right to her. She added that she did not want the baby around as it would cause too much trouble for her and her daughter; that she wanted to get it away from her husband and away from the house. She also admitted that the child was alive when she left it in the Champion garage; that she expected it to die; that she did not want the child to live.

On June 24, defendant gave another statement to the police, in which she said that in December 1960 her daughter Ruth had also given birth to a child which was alive at the time of birth; that she, defendant, cut the umbilical cord, washed the child, wrapped it in newspapers, and buried it. She stated

that her daughter Ruth had given birth to another child, that she cleaned it, wrapped it in newspapers and buried it. She stated that in addition to the child here in question, her daughter Dora had given birth to another live child which she, defendant, also wrapped in newspapers and buried. On this occasion she repeated the statement made previously, namely, that on June 16, after Dora had given birth to the child with which this action is concerned, she, defendant, cleaned the baby, wrapped it in a sheet, and abandoned it.

Defendant made another statement on June 25, again admitting that her daughters had delivered live children on several occasions, and that she had disposed of a child born to Ruth in June 1959 by putting it down the outhouse hole. She changed her story concerning the child born to her daughter Ruth in December, in that she stated she disposed of it by putting it in a drain or sewer. She also said that a child was born to her daughter Dora while visiting relatives, that the child was put in the trunk of the car, returned home, and later put in a drain hole. Upon this occasion defendant reiterated her story that she placed the child of Dora, born June 16, in the garage at the home of Mrs. Champion.

The District Attorney presented the matter to the grand jury for its determination of whether or not a crime had been committed. The daughter Dora testified concerning the birth of the child and the mother's taking of the child. Mrs. Champion testified about finding the child in her garage and, further, that she did not know whose child it was nor who placed it in her garage. Upon advice of counsel, defendant, the mother of Dora, refused to testify, whereupon her confessions and extrajudicial statements were presented to the grand jury. After consideration of the evidence, the grand jury returned a true bill charging defendant with violation of Penal Code section 271. That section reads as follows:

"Every parent of any child under the age of 14 years, and every person to whom any such child has been confided for nurture, or education, who deserts such child in any place whatever with intent to abandon it, is punishable by imprisonment in the State prison or in the county jail not exceeding one year or by fine not exceeding five hundred dollars ($500) or by both."

When defendant was brought before the superior court for arraignment upon the indictment, her counsel moved to have the indictment set aside upon the ground the People had failed to prove the corpus delicti. At the hearing of the motion,

evidence was presented indicating that Dora was mentally deficient. Therefore, contends defendant, the grand jury should not have been allowed to consider the daughter's testimony. It was further contended that the transcript of the proceedings before the grand jury does not reflect that Dora was sworn before testifying. The importance of Dora's testimony lies in the fact that it is the only evidence other than defendant's several confessions and extrajudicial statements, which links defendant to the child found in Mrs. Champion's garage. Succinctly stated, defendant's position as presented in the motion to set aside the indictment and on this appeal, is that absent Dora's testimony there is no evidence to show that the abandoned child had been "confided for nurture" to the mother. Proof of the entrustment, defendant contends to be an essential element of the corpus delicti. The trial court agreed with defendant's position and dismissed the indictment, from which order the People have appealed.

It does not appear to us that the testimony of the daughter was necessary to establish the corpus delicti. The testimony of Mrs. Champion that she found the baby in her garage, that she had never seen the child before, that she had no knowledge of the child's identity nor of the person who had placed it there, sufficiently established the prima facie corpus delicti of the crime of child abandonment as defined by Penal Code section 271. In California any element of the corpus delicti may be established by circumstantial evidence. Indeed, the corpus delicti may be established in its entirety, that is, solely by circumstantial evidence. (*People* v. *Scott*, 176 Cal.App.2d 458 [1 Cal.Rptr. 600]; *People* v. *Amaya*, 40 Cal.2d 70, 75 [251 P.2d 324].) Many California cases hold that the corpus delicti "may be proved . . . by inferences drawn from facts shown." (*People* v. *Hudson*, 139 Cal.App. 543, 544 [34 P.2d 741]; *People* v. *Alviso*, 55 Cal. 230, 233.)

It is equally well established that the identity of the perpetrator of the crime is never an essential element of the corpus delicti. As was said by the Supreme Court in *People* v. *Cobb*, 45 Cal.2d 158, 161 [287 P.2d 752]:

"All that need be shown by independent evidence before a confession may be introduced is that a crime has been committed by someone. [Citations.] Proof of the corpus delicti does not require proof of the identity of the perpetrators of the crime, nor proof that the crime was committed by the defendant."

See also *People* v. *Whitsett,* 160 Cal.App.2d 652, 657 [325 P.2d 529].

 Furthermore, the proof of the corpus delicti need not establish the crime beyond a reasonable doubt to warrant the introduction into evidence of confessions or extrajudicial statements of an accused. Prima facie proof of the corpus delicti is sufficient, as appears from the following excerpt from *People* v. *Selby,* 198 Cal. 426 [245 P. 426], at page 437:

"It is apparent from this review of the cases that the general trend of authority has been to hold that upon *prima facie* proof of the *corpus delicti* the extrajudicial statements, admissions, or confessions of the accused may be *admitted* in evidence and having been so properly admitted they may, with the evidence aliunde, be considered by the jury in its determination whether or not all the elements of the crime and the connection therewith of the accused have been established to a moral certainty and beyond all reasonable doubt." (See also *People* v. *Hudson, supra,* p. 544.)

 In the case before us the prima facie proof of the corpus delicti was established when it was shown that the infant was abandoned by someone. This, of course, was established by the testimony of Mrs. Champion. It was not necessary to show whether the daughter Dora or her mother, the defendant, committed the act. The court said in *People* v. *Ives,* 17 Cal.2d 459, 464 [110 P.2d 408]: "To prove a *prima facie* case of *corpus delicti,* all that was required was to show a reasonable probability that a criminal act of another had been the direct cause of the death . . ." A parallel situation was considered by the court in *People* v. *Sameniego,* 118 Cal. App. 165 [4 P.2d 809, 5 P.2d 653], a case involving a murder committed during a robbery, wherein the court said, at page 169:

"The contention that the existence of a preconceived plan or conspiracy on the part of defendants to commit a robbery must be proved as a part of the *corpus delicti* is without merit. The *corpus delicti* of a felonious homicide consists of the death of a human being and a criminal agency. Nowhere will there be found in our law the additional element contended for by appellant. Neither is the identity of the perpetrator of a crime an element of the *corpus delicti.*"

It is elemental that once prima facie proof of the corpus delicti has been made, the extrajudicial confession of a defendant is admissible. (*People* v. *Cobb, supra,* p. 162.)

We need not decide whether or not the trial court was justified in disregarding the testimony of the daughter, since there was ample evidence aside from her testimony to cause defendant to answer and stand trial.

The order setting aside the indictment is reversed.

Conley, P. J., concurred.

Brown, J., deeming himself disqualified, did not participate.

Respondent's petition for a hearing by the Supreme Court was denied February 21, 1962.