[No. C053362. Third Dist. Mar. 24, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JAVIER MIRANDA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II through VI of the Discussion.

**COUNSEL**

William I. Parks, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BLEASE, Acting P. J.**—In this appeal defendant challenges his conviction for the aggravated offense of transportation of a controlled substance for sale

from one county to another noncontiguous county within the state as in violation of the corpus delicti rule. (Health & Saf. Code, § 11379, subd. (b).)[1,2]

██ The corpus delicti rule precludes conviction where the corpus of the offense has been established on the basis of a defendant's uncorroborated statements. The corpus includes every element of the offense necessary to show "the fact of injury, loss, or harm, and the existence of a criminal agency as its cause." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168 [119 Cal.Rptr.2d 903, 46 P.3d 372] (*Alvarez*).) The corpus does not include the identity of the perpetrator, the degree of the crime, or the enhancement of the penalty for the offense. In the latter cases the corpus of the underlying offense has been established by evidence apart from the defendant's statements and satisfies the policy of the law that "one will not be falsely convicted, by his or her untested words alone, of a crime that never happened." (*Id.* at p. 1169.)

In this case the underlying offense of count 3 is the transportation of a controlled substance for sale. (§ 11379, subd. (a).) As to this offense the jury was instructed that defendant may not be convicted "based on his out-of-court statements alone." However, on the issue of transportation between noncontiguous counties, required under section 11379, subdivision (b) for imposition of an enhanced penalty for violation of subdivision (a), the court instructed the jury that it "may be proved by the defendant's statements alone."

██ Subdivision (b) of section 11379 provides that "the penalty provisions of subdivision (a)" shall be increased when any person "transports for sale any controlled substances specified in subdivision (a) within this state from one county to another noncontiguous county . . . ."[3] This does no more than

---

[1] A reference to a section is to the Health and Safety Code unless otherwise designated or apparent from the context.

[2] A jury convicted defendant Javier Miranda of possession of methamphetamine for sale (count 1; § 11378); transportation of methamphetamine (count 2; § 11379, subd. (a)); and transportation of methamphetamine from a noncontiguous county for purpose of sale (count 3; § 11379, subd. (b)). As to all counts, the jury found that the methamphetamine was in crystalline form (Pen. Code, § 1170.74); as to count 1, the jury found that the amount was over 57 grams of a substance containing methamphetamine (Pen. Code, § 1203.073, subd. (b)(2)).

On defendant's motion, the trial court set aside his convictions on counts 1 and 2 because, as pled, they were lesser included offenses of count 3. The court then sentenced defendant to state prison for nine years (the upper term) on count 3. The court also imposed various fines, including two fines of $160 each described as a drug program fee and a criminalist lab fee (§§ 11372.7, 11372.5).

[3] Section 11379, subdivision (b), provides in full: "Notwithstanding the penalty provisions of subdivision (a), any person who transports for sale any controlled substances specified in subdivision (a) within this state from one county to another noncontiguous county shall be punished by imprisonment in the state prison for three, six, or nine years."

enhance the sentence for the underlying section 11379, subdivision (a) offense that was established by evidence apart from defendant's out-of-court statements.

In the published portion of the opinion we hold that the corpus of an offense subject to the corpus delicti rule includes every element of the underlying offense necessary to show the fact of injury, loss, or harm, and the existence of a criminal agency as its cause, but does not include an element of an offense that does no more than aggravate the penalty for the underlying offense. (See *People v. Shoemake* (1993) 16 Cal.App.4th 243 [20 Cal.Rptr.2d 36].)[4]

We shall remand the matter to the trial court for clarification or modification of the fines. In all other respects, we shall affirm the judgment.

## FACTS

Defendant had stopped his car beside the highway for an inspection of tire chains by the highway patrol during a winter blizzard while driving north on Interstate 5 in Siskiyou County just south of the Oregon border. When asked for his driver's license he produced a Florida identification card, saying that he did not have a driver's license. His car was impounded when it was found that his driver's license was suspended. Later a package of methamphetamine was found in the snow adjacent to the trunk of his vehicle.

When interrogated defendant said that he had bought the car the day before in Modesto for $9,500 in cash but had not received a pink slip or bill of sale. He said he came from Florida, but had been living with his brother in Modesto for three weeks; however, he did not know his brother's address or telephone number. These statements were used to show that defendant had transported a controlled substance through a noncontiguous county in support of the aggravated offense of section 11379, subdivision (b).

The details relating to the offense are as follows.

On January 18, 2006, around 5:00 a.m., CHP (California Highway Patrol) Officer Mark Andersen was on duty on Interstate 5 in Siskiyou County, just

---

[4] In the unpublished portion of the opinion we reject defendant's arguments that the court erred prejudicially by admitting statements obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602] (*Miranda*), that trial counsel provided ineffective assistance by conceding the statements' admissibility, that the court erred prejudicially by failing to instruct the jury that it could not convict defendant on both count 3 and the lesser included offenses and that the court's imposition of the upper term on count 3 violated *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856]. We do agree that the court erred in its imposition of fines.

south of the Oregon state line. Blizzard conditions were backing up traffic on the highway. Posted in the northbound No. 1 lane, Andersen was checking for tire chains and citing drivers who had not put them on.

Andersen flagged down a Ford Mustang without chains, then contacted defendant, its driver and sole occupant. Directed to pull over into the center median behind Andersen's patrol car, defendant instead pulled over and stopped to the left of the patrol car.

Andersen opened defendant's right passenger door and asked to see his driver's license, proof of insurance, and registration card. Defendant produced only a Florida identification card, saying he did not have a driver's license. After finding out that defendant's license was suspended, Andersen called dispatch for a tow truck to impound defendant's car.

Andersen directed defendant to get out and walk over to where Andersen was standing. Walking around the back of his car, defendant did so. They then walked to the right front of the patrol car, an area illuminated by the patrol car's spotlight. As defendant stayed there, Andersen walked around the front of defendant's car to check the vehicle identification number (VIN) through the front windshield.

In response to Andersen's backup call, CHP Officer Dan Staudenmayer arrived and did an inventory search of defendant's car. After searching the trunk, Staudenmayer walked toward the driver's side, where he noticed a set of footprints in the snow, extending from the driver's side door toward the trunk, around the back, and toward Andersen's patrol car.

While Staudenmayer was searching defendant's car, Andersen handcuffed defendant, arrested him, put him in Andersen's patrol car, and drove to the CHP office.[5] Andersen took defendant to a large briefing room in which four or five other officers were present, seated him, and handcuffed him to a bolt fastened to the wall. Andersen then went back to his desk 25 to 30 feet away to fill out paperwork.

After Staudenmayer finished searching defendant's car, he realized that he had misplaced his inventory form and began to look for it. While doing so, he

---

[5] The jury was not supposed to learn why defendant was arrested at that time. During the in limine hearing on defendant's *Miranda* motion, it emerged that defendant was arrested because Staudenmayer had found a stolen Florida license plate in defendant's trunk. However, after the trial court granted defendant's *Miranda* motion, it also ruled this evidence inadmissible because its discovery was connected to the statements obtained in violation of *Miranda*. Staudenmayer nevertheless mentioned it in his testimony. The court granted defendant's motion to strike the testimony and admonished the jury to disregard it.

spotted a package in the snow resembling a small submarine sandwich wrapped in plastic or cellophane, three or four feet from the car's left rear taillight (and a similar distance from the footprints he had seen near the driver's side). The package was wet on top but had not accumulated any snow. Staudenmayer picked it up and took it back to the CHP office.

As Andersen was doing paperwork, Staudenmayer walked into the briefing room holding the package in one hand. Defendant said: "That's not mine." Staudenmayer walked to Andersen's desk and gave him the package. It had a white powdery substance inside the cellophane wrapping, and Andersen suspected the package contained narcotics.

After the other officers had left the briefing room, defendant asked Andersen: "Where did he get it?" Andersen falsely stated: "[I]n the car." Defendant said: "You did . . . ," then fell silent, hung his head, and looked at the floor.

Later, after waiving his *Miranda* rights, defendant said that he had bought his car the day before in Modesto for $9,500 in cash from Hector Gonzales (whom he had met through a friend he could not name); he did not receive a pink slip or bill of sale. He came from Florida, but had been living with his brother in Modesto for three weeks; however, he did not know his brother's address or telephone number. When stopped, he had been driving to Portland, Oregon, to visit a friend in the hospital; however, he did not know his friend's name, address, or telephone number, or the name of the hospital. Defendant was unemployed.

CHP Officer Eric Degraffenreid, a narcotics expert, inspected the package found by Staudenmayer. As he unwrapped it, he noticed baby wipes, often used to distract drug-sniffing dogs, within the cellophane. He then found a plastic bag containing a large amount of what appeared to be crystal methamphetamine, the drug's more potent form. The bag and its contents weighed 358.15 grams.[6]

According to Degraffenreid, a usable amount of methamphetamine equals .02 gram to .1 gram; a typical amount for sale would be one-half gram to one gram. Street-level dealers in Siskiyou County dealt in amounts from a few grams to half an ounce. The amount found here, uncommon for Siskiyou County, suggested "a very major dealer." It would be worth $5,000 to $12,000 wholesale, but if broken up in smaller amounts it could be worth at least $35,000. Degraffenreid opined that it was possessed for sale.

---

[6] The parties stipulated that the substance itself weighed 348.32 grams and contained methamphetamine.

Defendant did not testify or put on evidence.

After the People rested, defense counsel moved orally for a directed verdict of acquittal on count 3 (Pen. Code, § 1118.1). Counsel argued that the People had not satisfied the corpus delicti rule as to that count because they had not offered any evidence, aside from defendant's statements, of the "element" of transporting methamphetamine from a noncontiguous county (Stanislaus County).

After hearing argument, the trial court ruled as follows:

"Okay. First of all, I do acknowledge that this is not a clear-cut area of the law, but in this particular case, at least, if the jury finds that the defendant, in fact, was the person who had this substance, then there is ample evidence for a decision of conviction on counts 1 and 2, if they were to decide that.

"All that count 3 adds to the mix, if you add the elements of . . . counts 1 and 2 together, all that's added is the non-contiguous-counties aspect.

"The underlying purpose, it seems to me, of the corpus delicti rule is to prevent someone from being convicted of a crime that essentially never happened because of their own statements.

"That really cannot happen in this particular case because he's either going to be found to have been the person who had the substance that we're talking about, or he's not.

"So, recognizing that this is [an] unsettled area, this is undoubtedly going to be an appeal issue, I do believe that the non-contiguous[-]county aspect is not part of the corpus delicti. I could be absolutely wrong, and the court of appeal could disagree with me, but that's the way it appears to me.

"I also think that there is some very thin evidence that the defendant started from a non-contiguous county and that there is evidence of his residence out of state. I must say that's very thin. Whether that's enough in and of itself to attack the problem from the direction of . . . some evidence, however thin, supporting an element of the crime, I'm not confident of that at all. But I'm essentially ruling that the non-contiguous-county aspect is not a part of the corpus."

Over defendant's objection, the trial court instructed the jury with the following modified version of Judicial Council of California Criminal Jury Instructions (2006) former CALCRIM No. 359:

"The defendant may not be convicted of any crime based on his out-of-court statements alone. Unless you conclude that other evidence shows someone committed the charged crime, you may not rely on any out-of-court statements by the defendant to convict him.

"The other evidence may be slight and need only be enough to support a reasonable inference that someone's criminal conduct caused an injury, loss, or harm. The other evidence does not have to prove beyond a reasonable doubt that the charged crime actually was committed.[7]

"The identity of the person who committed the crime *and the issue of non-contiguous counties* may be proved by the defendant's statements alone.[8]

"You may not convict the defendant unless the People have proved his guilt beyond a reasonable doubt." (Italics added.)

## DISCUSSION

### I

### Corpus Delicti

Defendant contends that the trial court violated the corpus delicti rule in instructing the jury that the element of section 11379, subdivision (b), that imposes an enhanced sentence for the transportation of illicit drugs between noncontiguous counties, may be proved on the basis of defendant's statements alone. We disagree.

"Virtually all American jurisdictions have some form of rule against convictions for criminal conduct not proven except by the uncorroborated extrajudicial statements of the accused. [Citations.] This rule is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened. [Citations.]" (*Alvarez, supra,* 27 Cal.4th at p. 1169, fn. omitted.)

---

[7] This paragraph now reads: "That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed." (CALCRIM No. 359 (2007–2008) p. 137.)

[8] In both the former and the current standard version of CALCRIM No. 359, this paragraph reads: "The identity of the person who committed the crime [and the degree of the crime] may be proved by the defendant's statement[s] alone." (CALCRIM No. 359 (2007–2008) p. 137; CALCRIM No. 359 (2006) p. 140.)

■ "Wigmore explains [the rule] this way: every crime 'reveals three component parts, *first* the *occurrence* of the specific kind of injury or loss (as in homicide, a person deceased; in arson, a house burnt; in larceny, property missing); *secondly*, somebody's criminality (in contrast, e.g., to accident) as the source of the loss,—these two together involving the commission of a crime by *somebody*; and *thirdly*, the accused's *identity* as the doer of this crime.' By the great weight of authority, the first two without the third constitute the *corpus delicti*." (1 LaFave, Substantive Criminal Law (2d ed. 2003) § 1.4(b), p. 29, fns. omitted.)

■ California distinguishes between the evidentiary and the proof sides of the corpus delicti rule since "[it] is not a requirement of federal law, and it has no basis in California statutory law." (*Alvarez, supra*, 27 Cal.4th at p. 1173.) The evidentiary side of the rule, that "restrict[s] the *admissibility in evidence* of otherwise relevant and admissible extrajudicial statements of the accused," has been abrogated by article I, section 28, subdivision (d) of the California Constitution ("Truth-in-Evidence" law). (*Alvarez*, at p. 1177.) However, "section 28(d) did not eliminate the independent-proof rule . . . that . . . prohibits *conviction* where the only evidence that the crime was committed is the defendant's own statements outside of court." (*Id.* at p. 1180.)

Thus, the rule in California: "In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant. [Citations.]" (*Alvarez, supra*, 27 Cal.4th at pp. 1168–1169.) This includes "preoffense statements of later intent as well as . . . postoffense admissions and confessions . . . ." (*People v. Carpenter* (1997) 15 Cal.4th 312, 394 [63 Cal.Rptr.2d 1, 935 P.2d 708], relying on *People v. Beagle* (1972) 6 Cal.3d 441, 455 [99 Cal.Rptr. 313, 492 P.2d 1].) The purpose of the corpus delicti rule is to satisfy the policy of the law that "one will not be falsely convicted, by his or her untested words alone, of a crime that never happened." (*Alvarez, supra*, 27 Cal.4th at p. 1169.)

The corpus delicti rule in California thus requires proof of every element of the "body of the crime" necessary to show the commission of a crime by *somebody,* i.e. "the fact of injury, loss, or harm, and the existence of a criminal agency as its cause." (*Alvarez, supra*, 27 Cal.4th at p. 1168.) However, for these reasons it does not include the identity of the perpetrator or the criminal agency of the defendant (*People v. Alcala* (1984) 36 Cal.3d 604 [205 Cal.Rptr. 775, 685 P.2d 1126]; *People v. Westfall* (1961) 198 Cal.App.2d

598, 601 [18 Cal.Rptr. 356]), the degree of the crime (*People v. Cooper* (1960) 53 Cal.2d 755, 765 [3 Cal.Rptr. 148, 349 P.2d 964]), or the facts necessary for the enhancement of the penalty for an offense (*People v. Shoemake, supra*, 16 Cal.App.4th at pp. 252, 256).[9]

■ In this case there is no claim the elements of the underlying offense of subdivision (a) of section 11379, that the crime of transporting illicit narcotics occurred, were not met without defendant's statements. That fully satisfies the corpus delicti rule that requires proof of "the fact of injury, loss, or harm, and the existence of a criminal agency as its cause." (*Alvarez, supra*, 27 Cal.4th at p. 1168.) Section 11379, subdivision (b), upon which defendant relies, did no more than enhance the "penalty provisions of subdivision (a)" when any person "transports for sale any controlled substances specified in subdivision (a) within this state from one county to another noncontiguous county . . . ." (See *People v. Shoemake, supra*, 16 Cal.App.4th 243.)

II–VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The fines imposed by the trial court pursuant to Health and Safety Code sections 11372.5 and 11372.7 are vacated and the matter is remanded for further proceedings in accordance with opinion. In all other respects, the judgment is affirmed.

Davis, J., concurred.

---

[9] In California " '[t]he independent proof [of the corpus delicti,] may be [proved] by circumstantial evidence [citation], and it need not be beyond a reasonable doubt. A slight or prima facie showing, permitting the reasonable inference that a crime was committed, is sufficient. [Citations.] If the independent proof meets this threshold requirement, the accused's admissions may then be considered to strengthen the case on all issues.' " (*People v. Robbins* (1988) 45 Cal.3d 867, 885–886 [248 Cal.Rptr. 172, 755 P.2d 355], quoting from *People v. Alcala, supra*, 36 Cal.3d at pp. 624–625; see also *People v. Jennings* (1991) 53 Cal.3d 334, 368 [279 Cal.Rptr. 780, 807 P.2d 1009].) Thus, in *People v. Jones* (1998) 17 Cal.4th 279, 302 [70 Cal.Rptr.2d 793, 949 P.2d 890] [circumstantial evidence of oral copulation was inferred by multiple sexual acts], in *People v. Robbins, supra*, 45 Cal.3d at p. 886 [the evidence of victim's unclothed body was evidence of defendant's pedophilia and victim's age sufficient to infer lascivious act on minor]; and in *People v. Jennings, supra*, 53 Cal.3d at p. 364 [the evidence of the permanent deprivation of car was inferred from burned car near victim's body].)

*See footnote, *ante*, page 98.

**SIMS, J., Concurring.**—I concur in the judgment and in parts II through VI of the majority opinion.

I concur in the result reached in part I, dealing with the corpus delicti rule, but I respectfully disagree with the majority's analysis. The majority reason that the corpus delicti rule requires independent evidence to establish every element of an offense, but transportation between noncontiguous counties is not an element of the offense.

My argument is the reverse: I think transportation between noncontiguous counties is an element of the offense defined by Health and Safety Code section 11379, subdivisions (a) and (b),[1] but I do not think current California law requires independent proof of every element of a crime to satisfy the corpus delicti rule. Rather, I think it is sufficient for independent evidence to show that *some crime* was committed. In this case, I do not have to decide whether proof of a misdemeanor would suffice, because here the evidence showed commission of the crime of felony transportation of a controlled substance.

The first question is whether transportation between noncontiguous counties is an element of the offense of which defendant was convicted.

The majority argue that section 11379, subdivision (b), is merely a penalty provision, like an enhancement, to which the corpus delicti rule does not apply. In my view, and with respect, this is a wholly artificial distinction. Surely subdivision (b) of section 11379 contemplates that the prosecution must prove transportation between noncontiguous counties and that the jury must find this fact true. In this case, the jury was so instructed as follows:

"The defendant is charged in Count 3 with Transportation of Methamphetamine, a Controlled Substance, Between Noncontiguous Counties for Purposes of Sale.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant transported a controlled substance;

"2. The defendant knew of its presence;

---

[1] References to section 11379 are to this statute.

"3. The defendant knew of the substance's nature or character as a controlled substance;

"4. When the defendant transported the controlled substance, he intended to sell it;

"5. *The defendant transported the controlled substance between noncontiguous counties;*

"6. The controlled substance was Methamphetamine;

"AND

"7. The controlled substance was in a usable amount." (Italics added.)

What sense does it make to say that "[t]he defendant knew of its presence" is an element of the offense but "[t]he defendant transported the controlled substance between noncontiguous counties" is not an element?

The prosecution must prove both.

The jury must find both.

So what sense does it make to say transportation between noncontiguous counties is not an element of the offense? In my view, none.

I would adopt the definition of "element of an offense" set out in section 1.13, subdivision (9), of the Model Penal Code as follows:

"(9) 'element of an offense' means (i) such conduct or (ii) such attendant circumstances or (iii) such a result of conduct as

"(a) is included in the description of the forbidden conduct in the definition of the offense; or

"(b) *establishes the required kind of culpability*; or

"(c) negatives an excuse or justification for such conduct; or

"(d) negatives a defense under the statute of limitations; or

"(e) establishes jurisdiction or venue." (10A pt. 1, West's U. Laws Ann. (2001) Model Pen. Code, § 1.13, subd. 9, p. 91, italics added.)

Proving that a controlled substance was transported between noncontiguous counties "establishes the required kind of culpability" (an increased sentence) and is therefore an element of the offense.

The majority say that the corpus delicti rule "requires proof of every element of the 'body of the crime.' " I respectfully disagree.

Thus, most recently, our Supreme Court said in *People v. Alvarez* (2002) 27 Cal.4th 1161 [119 Cal.Rptr.2d 903, 46 P.3d 372], "The independent proof [required] may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible. [Citations.] *There is no requirement of independent evidence 'of every physical act constituting an element of an offense,' so long as there is some slight or prima facie showing of injury, loss, or harm by a criminal agency.* [Citation.] In every case, once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues. [Citations.]" (*Alvarez, supra,* 27 Cal.4th at p. 1171, italics added.)

An examination of *People v. Jones* (1998) 17 Cal.4th 279 [70 Cal.Rptr.2d 793, 949 P.2d 890], relied on in *Alvarez,* makes clear that the People need not adduce evidence of every element of an offense in order to satisfy the corpus delicti rule. There, as pertinent, defendant contended the trial court had erred in denying his motion, brought pursuant to Penal Code section 995, to dismiss a charge of oral copulation, on the ground the corpus delicti of the crime had not been proved. (17 Cal.4th at p. 299.)

Our Supreme Court concluded the corpus delicti rule had been satisfied, reasoning as follows:

"As the facts are undisputed, in this case we are faced only with the legal question of whether there was sufficient evidence to establish the corpus delicti of oral copulation. Section 288a, subdivision (a), defines this crime as 'the act of copulating the mouth of one person with the sexual organ or anus of another person.'

"Keeping in mind the low threshold of proof required to satisfy the corpus delicti rule, we conclude that the magistrate erred in finding this low

threshold was not met by the evidence presented at the preliminary examination. The state of the victim's clothing (no underwear or shoes) and the forensic evidence (semen in the victim's vagina and on her external genitalia and anus) indicates multiple sexual acts occurred. That the victim was forcibly abducted, beaten, shot in the head, and left by the side of the road for dead gives rise to an inference that the sexual activity that occurred was against the victim's will. This circumstantial evidence of multiple forcible sexual acts sufficiently establishes the requisite prima facie showing of both (i) an injury, loss or harm, and (ii) the involvement of a criminal agency.

"Defendant, however, contends that the prosecution failed to establish the corpus delicti of oral copulation because no semen was found in the victim's mouth. In other words, he argues that the lack of evidence of the *specific loss* or harm to this victim is fatal to the establishment of the corpus delicti. The law's requirements, however, are not so strict. Two previous cases involving application of the rule to a charged sexual assault are illustrative. In *People v. Jennings* [(1991)] 53 Cal.3d 334 [279 Cal.Rptr. 780, 807 P.2d 1009], the body of the victim, a known prostitute, was found in an irrigation canal in a rural area. She was unclothed, and although forensic examination detected she had suffered a broken jaw, the advanced decomposition of her body made determining whether she had been sexually assaulted impossible. More specifically, there was no independent evidence that the defendant ever sexually penetrated the victim. (See § 263 ['Any sexual penetration, however, slight, is sufficient to complete the crime [of rape].'].)

"Despite the absence of any independent evidence of sexual penetration, we found that the trial court properly admitted evidence of the defendant's extrajudicial statement that he had raped the victim before killing her. Although we characterized the independent evidence of rape as ' "thin" ' (*People v. Jennings, supra*, 53 Cal.3d at p. 369), we nevertheless concluded that the unclothed condition of the victim's body, its location when found and the evidence of a broken jaw, considered together, were sufficient to establish the corpus delicti of rape.

"*People v. Robbins* [(1988)] 45 Cal.3d 867 [248 Cal.Rptr. 172, 755 P.2d 355], is in accord. The evidence in *Robbins* showed that the victim, a six-year-old boy, was last seen riding on a motorcycle with an unknown blond man. The boy's skeletal remains were found three months later. The victim's neck had been broken and his body was found unclothed. The defendant had been diagnosed as a pedophile. Although the decomposed remains of the victim could not establish whether he had been sexually assaulted before his death, the defendant made an extrajudicial admission that

he abducted the victim and sexually assaulted him before strangling him. We found the trial court properly admitted this confession over a corpus delicti objection. (*Id.* at pp. 885–886.) 'In view of the nature of the offense and the circumstances of the case (i.e., the body was not discovered for some time, hence it was impossible to verify the sexual conduct by scientific evidence, and there were apparently no eyewitnesses to the crime) we do not believe the corpus delicti rule can be interpreted to call for more; the law does not require impossible showings.' (*Id.* at p. 886.)

"*People v. Jennings, supra,* 53 Cal.3d 334, and *People v. Robbins, supra,* 45 Cal.3d 867, require a similar result in the instant case. In all three cases, the victim's body was found unclothed (or partially clothed) in a location and condition suggesting the involvement of a criminal agency. *In all three cases, independent evidence of a certain element of a sexual crime was lacking:* penetration necessary for rape in *Jennings,* a touching of a child with lewd intent in *Robbins,* oral-genital or oral-anal contact in this case. As *Jennings* and *Robbins* demonstrate, *we have never interpreted the corpus delicti rule so strictly that independent evidence of every physical act constituting an element of an offense is necessary.* Instead, there need only be independent evidence establishing a slight or prima facie showing of some injury, loss or harm, and that a criminal agency was involved." (*People v. Jones, supra,* 17 Cal.4th at pp. 302–303, italics added.)

Here, even though transportation from one county to a noncontiguous county was an element of the offense, the People did not have to prove it by independent evidence, just as they did not have to prove single elements in the cases collected in *People v. Jones, supra,* 17 Cal.4th at pages 302–303. Rather, the People's burden was to make "some slight or prima facie showing of injury, loss, or harm by a criminal agency." (*Alvarez, supra,* 27 Cal.4th at p. 1171.) The People made this showing by adducing evidence, apart from any statements of defendant, that a quantity of methamphetamine, sufficient for sale, was found near defendant's car, several feet from where he had been seen walking, shortly after he was stopped. This prima facie showing of defendant's felony violation of section 11379, subdivision (a) (transportation of a controlled substance), was sufficient to satisfy the corpus delicti rule with respect to a violation of section 11379, subdivision (b). Defendant's contention to the contrary is not meritorious.

In the circumstances of this case, the trial court did not err in instructing as it did on the corpus delicti rule.

Appellant's petition for review by the Supreme Court was denied June 25, 2008, S163388. George, C. J., and Corrigan, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.