Filed 11/17/14  P. v. Rose CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHARLES EDWARD ROSE,<br><br>    Defendant and Appellant. | 2d Crim. No. B250224<br>(Super. Ct. No. F446382)<br>(San Luis Obispo County) |

Charles Edward Rose appeals his conviction by jury for two false bomb threats (counts 1 & 2; Pen. Code, § 148.1, subd. (c))[1] and making an annoying 911 call (count 3: § 653x).   The trial court, in a bifurcated proceeding, found that appellant had suffered five prior serious or violent felony convictions (§§ 667, subds. (d) -(e); 1170.12, subds. (b) - (c)) and denied his *Romero* motion to strike the prior strike convictions. Appellant was sentenced to 25 years to life state prison.   We modify the judgment to reflect that a mandatory $120 court security fee (§ 1465.8, subd. (a)(1)) was imposed and affirm the judgment, as modified.

---

[1] All statutory references are to the Penal Code.

*Facts and Procedural History*

On April 5, 2010, the San Luis Obispo Police Department received a 911 call that a bomb was at San Luis Obispo High School. The call was made from a payphone at Scolari's, a local grocery store.

On April 22, 2010, at 9:56 a.m., the same payphone was used to make another bomb threat. The caller said that bombs were at three San Luis Obispo schools. San Luis Obispo Police Department Sergeant Keith Storton and Detective Cory Pierce staked out the payphone in an unmarked car. At 10:40 a.m., they saw appellant make a call from a payphone at a nearby 7-Eleven store. Appellant told the 911 operator, "I gonna kill me a fuckin' cop today!" After appellant hung up, the police dispatcher said, "Oh, that's him again."

Officer Colleen Kevany was nearby. She detained and questioned appellant without advising him of his *Miranda* rights. Officer Kevany said "I've [got] a lot of leeway right here what I can do with you, Okay?" Appellant said, "I'm going to jail either way, right?" Officer Kevany responded, "Not necessarily. There's a misdemeanor offense, there's a felony offense. It depends on which way [you] wanna go with this." Appellant denied that he was at Scolari's.

Officer Eric Lincoln arrived and asked if there were any bombs at the schools. Appellant said there were no bombs, just threats. Officer Lincoln arrested appellant and put him in a police car. Before he was transported to the police station, appellant asked Detective Pierce if he could work for the police and "help himself out to get out of trouble." Detective Pierce said they could discuss it later after he completed his investigation.

At the police station, appellant waived his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694]) and spoke to Detective Pierce and Sergeant Storton. The interview was videotaped. Detective Pierce asked, "Okay, With the rights in mind, do you want to talk to us about the phone calls and stuff?" Appellant responded: "Now if I don't, then could we still work a deal?" Detective Pierce said that

he first had to conduct his investigation. Appellant admitted making the April 22, 2010 phone calls.

Detective Pierce asked if appellant made the April 5, 2010 bomb threat and played a recording of the call. Appellant agreed it sounded like his voice and complained "I'm still gonna get [a] life sentence . . . 'cause . . . I'm a second striker." Detective Pierce responded: "Maybe not. Maybe they'll strike the strike. I don't know what the DA [will] do. [¶] . . . [¶] [I]t depends on what the offense is and it also depends on the person and how honest they are and how much work the DA and the cops have to go through to prove their case." Appellant confessed to making all three calls.

*First Trial*

During the first trial, the trial court found that appellant's statements to Officers Kevany and Lincoln were inadmissible because there was no *Miranda* advisement. But the trial court did find that the police-station *Miranda* interview was admissible and that no threats or promises of leniency were made to induce the confession. Appellant pled no contest to the April 22, 2010 bomb threat call (count 2) and admitted suffering five prior strike convictions. The trial court sentenced him to 25 years to life state prison. He appealed. (B241027) On October 17, 2012, we dismissed the appeal after the trial court vacated the conviction because the negotiated plea was invalid.[2]

*Second Trial*

On remand, the case proceeded to jury trial. The trial court excluded the pre-*Miranda* statements and played a redacted tape of the *Miranda* interview to the jury. Appellant was found guilty on two counts of making a bomb threat and one count of making an annoying call to the police. After the trial court found the prior strike

---

[2] As a term of the plea, it was agreed that the trial court would grant a certificate of probable cause (§ 1237.5, subd. (a)) from which appellant could appeal the denial of his motion to exclude the post-*Miranda* statement. Such an order/judgment is non-appealable following a no contest plea. (See *People v. DeVaughn* (1977) 18 Cal.3d 889, 896.)

3

allegations were true, it denied a motion to strike the prior strike enhancements (§ 1385) and denied a motion for new trial. Appellant was sentenced to concurrent 25-year-to-life terms on counts 1 and 2 (false bomb threats) and a six-month concurrent term on count 3 (making an annoying 911 call).

*Miranda Interview*

Relying on *Missouri v. Seibert* (2004) 542 U.S. 600, 604 [124 S.Ct. 2601] (*Seibert*), appellant argues that the in-the-field custodial questioning tainted the *Miranda* interview. In S*eibert,* the United States Supreme Court condemned the use of a two-step custodial interrogation in which incriminating statements were intentionally elicited without a *Miranda* waiver to later coerce a confession. There, defendant was arrested for murder and questioned for 30 or 40 minutes until she confessed, After a short break, *Miranda* warnings were given and defendant was asked the same questions and confessed. The Supreme Court stated that the following factors should be considered to determine "whether Miranda warnings delivered midstream could be effective to accomplish their object: the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second [round of questions], the continuity of the police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." (*Id.*, at p. 615 [124 S.Ct. at p. 2612].)

*Seibert* is inapposite because there was no deception, coercion, or coordinated interrogation to extract a confession. Officers Kevany and Lincoln questioned appellant due to public safety concerns. Although the trial court found that the public safety exception to *Miranda* did not apply (see *New York v. Quarles* (1984) 467 U.S. 649, 655-656 [81 L.Ed.2d 550, 557]), there was no intentional violation of *Miranda.* "Unlike *Seibert,* there is no evidence here that the officers were 'following a policy of disregarding the teaching of *Miranda*.' [Citation.]" (*People v Scott* (2011) 52 Cal.4th 452, at p. 478.)

The trial court reasonably concluded that the post-*Miranda* statement was voluntary and untainted by appellant's earlier statements. " 'It is an unwarranted

4

extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period.' " (*People v. Lewis* (1990) 50 Cal.3d 262, 275.)

Appellant was aware of his *Miranda* rights and told Detective Pierce that his in-the-field statement "was done without Miranda" and "can't be used." The record shows that appellant agreed to give a statement and freely and voluntarily waived his *Miranda* rights. "A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights." (*Oregon v. Elstad* (1985) 470 U.S. 298, 314 [84 L.Ed.2d 222, 235].)

### *Alleged Promise of Leniency*

Before and during the *Miranda* interview, appellant tried to "work a deal" with the officers but was rebuffed. Appellant admitted making the April 22, 2010 phone calls but denied he was in town when the April 5, 2010 call was made. Detective Pierce asked appellant to be truthful. "You already admitted the other two [i.e., the April 22, 2010 calls]. Let me -- Let me put it this way: It's gonna look better for you if you come clean on this one so we don't have to go through all the hoops and stuff to try and prove that it's you. If you listen to the tapes, it's you. [¶] . . . Because if it ends up going before a jury, and you're lying about one, but you already admitted to the other ones and they listen to those tapes, they're gonna think you're -- [¶] . . . [¶] a bad guy." Appellant listened to a recording of the April 5, 2010 call and said "that sounds like me."

Appellant argues that his confession was involuntary because the officers made an express or implied promise of leniency. Exhortations to tell the truth or to take the right path do not make a confession involuntary. (*People v. Belmontes* (1988) 45 Cal.3d 744, 773; *In re Shawn D.* (1993) 20 Cal.App.4th 200, 210.) Detective Pierce said

that appellant's truthfulness and cooperation would benefit appellant but that it was up to the district attorney to decide what, if any, consideration appellant would receive. No one threatened, yelled at, or promised appellant anything. " '[A]n interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect.' " (*U.S. v. Bautista-Avila* (9th Cir. 1993) 6 F.3d 1360, 1364.)

Appellant argues that Officer Kevany dangled the prospect of leniency in return for a confession. Officer Kevany asked appellant to tell the truth and said "we can do a lot to help you out . . . . " Appellant stated that he had been on parole for rape, attempted murder, robbery and burglary, and was currently on probation for not registering as a sex offender. Officer Kevany said: "I've got a lot of leeway, [but] you being on probation kinda cuts it down a little bit." Appellant asked "am I going to jail or what?" Officer Kevany responded: "Probably at this point. Cause you're on probation. Like I said I'm - I'm kinda limited with what I can do with that. . . . I mean we know you did it, At least this one. You probably did the one at Scolari's earlier too."

Appellant knew he was going to jail whether he cooperated or not. There was no promise of leniency. "[A]dvice or exhortation by a police officer to an accused to 'tell the truth' or that 'it would be better to tell the truth' unaccompanied by a threat or promise, does not render a subsequent confession involuntary." (*People v. Hill* (1967) 66 Cal.2d 536, 549.)

In *People v. Nitschmann* (1995) 35 Cal.App.4th 677 we held that a suspect may not "out *Mirandize"* the police by reciting his *Miranda* rights and later claim that the admonition was defective. (*Id.*, at p. 683.) "[T]hose who know the *Miranda* rules, including 'con-wise' arrestees such as appellant, are entitled to the admonition. But a rule excluding otherwise voluntary statements after the arrestee admonishes himself on the record would do violence to common sense." (*Id.*, at p. 683.)

The same analysis applies where the suspect tells the police he is a second striker and asks for leniency before he is *Mirandized*. Like *Nitschmann,* appellant was

6

"con-wise," told Sergeant Storton that "I'm looking at a felony. That's -- that's a life sentence," and offered to work as a drug informant. Detective Pierce cut appellant off and said "before we talk about that kind of stuff, we kinda have to finish our investigation . . . ." There were no offers or promises of leniency.

The trial court found that if there was "any discussion about some kind of exchange or deal, it . . . was initiated by Mr. Rose in the police car[.] Mr. Rose is the one who begins to talk about that during the beginning of the interview at the police station. [¶] . . . The court does not think there [were] any threats or promises of leniency made by law enforcement that would have induced the confession." Based on appellant's age (45), education, criminal history, prior contacts with the criminal justice system, and his statements before and during the *Miranda* interview, the trial court reasonably concluded that appellant freely and voluntarily waived his *Miranda* rights. (*People v. Williams* (1997) 16 Cal.4th 635, 659-661 [promise of leniency not motivating cause of defendant's admissions]; *People v. Vasila* (1995) 38 Cal.App.4th 865, 876.) Appellant bases his involuntariness claim on interpretations of the evidence and questions of the credibility of witnesses that the trial court implicitly rejected. Because substantial evidence supports those factual determinations, we rely on them and reject appellant's claim that his statement was the result of either threats or promises. (*People v. Tully* (2012) 54 Cal.4th 952, 993.)

*Harmless Error*

Assuming that the post-*Miranda* statement was improperly admitted, the alleged error was harmless beyond a reasonable doubt. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 310-311 [113 L.Ed.2d 302, 332]; *People v. Cahill* (1993) 5 Cal.4th 478, 507, 509-510.) On counts 2 and 3, Sergeant Stanton and Detective Pierce watched appellant make the 7-Eleven call a few minutes after the school bomb threat. A tape recording of the two April 22, 2010 phone calls was played to the jury and was damning evidence.

The April 5, 2010 bomb threat (count 1) was also made from the payphone at Solari's market. Like count 2, the caller said that a bomb was at a San Luis Obispo

7

school. The jury asked the trial court to replay the 911 tapes and compared the caller's voice on the April 5, 2010 call with the April 22, 2010 calls. The trial court instructed that appellant could not be convicted "based on his out-of-court statements alone. You may rely on the defendant's out-of-court statements to convict him if you conclude that other evidence shows that the charged crime. . . was committed. [¶] The other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed. [¶] The identity of the person who committed the crime and the degree of the crime may be proved by the defendant's statements alone." (CALCRIM 359; see *People v. Westfall* (1961) 198 Cal.App.2d 598, 601 [identity of the perpetrator of the crime is not an essential element of the corpus delicti].)

The recorded April 5, 2010 and April 22, 2010 phone calls establish appellant's guilt. The school bomb threats (counts 1 and 2) were made by a male with the same voice, from the same payphone, at the same grocery store. A few minutes latter, appellant made the 7-Eleven call and said he was going to "kill me a fuckin' cop today!" Sergeant Storton and Detective Pierce witnessed appellant make the call. Appellant's voice was immediately recognized by the police dispatcher/911 operation who confirmed "that's him again." The evidence was overwhelming. Any error in admitting the confession was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710]; *People v. Bradford* (1997) 15 Cal.4th 1229, 1314.)

*Motion for New Trial*

Appellant argues that the trial court erred in denying his motion for new trial motion based on newly discovered evidence that Detective Pierce was later indicted in federal court for extortion and bribery. Appellant's trial attorney argued that Detective Pierce's "M.O. was to [get] . . . everyone he . . . arrested . . . to work for law enforcement. . . . I think that 's what [Officer Pierce] did to [appellant] when he induced him to make a statement."

8

Detective Pierce's alleged misconduct occurred two years after appellant was arrested and was collateral to appellant's guilt.[3] It was only admissible for impeachment purposes. A motion for new trial may not be granted where the only value of the newly discovered testimony is as impeaching evidence. (*People v. Hall* (2010) 187 Cal.App.4th 282, 299; *People v. Long* (1940) 15 Cal.2d 590, 607-608.) The denial of a motion for new trial " ' "will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' [Citations.]" (*People v. Delgado* (1993) 5 Cal.4th 312, 328.)

Appellant argues that the new evidence would have changed his defense strategy at trial. That is highly speculative because Detective Pierce's alleged misconduct occurred long after appellant was arrested and confessed. Appellant opines that if Detective Pierce's reliability was in doubt, the voluntariness of appellant's confession was also in doubt. This is speculative. (See *People v.* Tully, *supra,* 54 Cal.4th at p. 986 [wrongful inducement and defendant's statement must be causally linked]; *People v. Holloway* (2004) 33 Cal.4th 96, 115 [same] ].) Detective Pierce's testimony was corroborated by the other officers, the tape of the 7-Eleven phone call, and the videotaped *Miranda* interview. Sergeant Storton observed appellant make the 911 call from the 7-Eleven store which was recorded and monitored by the police dispatcher. Officers Kevany and Lincoln detained and questioned appellant, but no offer of leniency was made or accepted. That is why appellant continued to ask Detective Pierce about providing information to the police and "working a deal." Sergeant Storton confirmed that he did not hear Detective Pierce or Officers Kevany or Lincoln make any promises of leniency.

---

[3] Detective Pierce was indicted on March 1, 2013, for bribery and extortion that allegedly occurred between February 4, 2012 and February 3, 2013, nearly two years after appellant's arrest and confession. Detective Pierce testified at appellant's trial on November 15, 2012.

Detective Pierce did have one-on-one contact with appellant before Officer Lincoln drove him to the police station.[4] The conversation was less than 30 seconds and initiated by appellant who wanted to work a deal. **(B241027/RT 61-62)~** Snubbed by Detective Pierce, appellant told Sergeant Storton before the *Miranda* interview that he could work as a drug informant. Detective Pierce cut him off and said "before we talk about that kind of stuff, we kinda have to finish our investigation . . . . " Appellant waived his *Miranda* rights and was interviewed in the presence of Sergeant Storton. The videotape of the interview and the recorded 911 calls were played to the jury. Appellant makes no showing that newly discovered evidence about Detective Pierce's criminal misconduct, which occurred nearly two years after appellant's arrest, would render a different result reasonably probable. (*People v. Delgado, supra,* 5 Cal.4th at p. 329; *People v. Soojian* (2010) 190 Cal.App.4th 491, 519.)

Appellant argues that the trial court applied the wrong legal standard when it cited *People v. Howard* (2010) 51 Cal.4th 15 and stated that "I don't believe that the evidence that Officer Pierce offered was the strongest evidence introduced against the defendant. [¶] I believe it was his confession, the 911 calls and the observations of Officer Pierce and Officer Storton." The trial court cited the wrong case but correctly followed the law in denying the motion for new trial. (See e.g., *People v. Zapien* (1993) 4 Cal.4th 929, 976 [ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason].) It is settled that motion for new trial should not be granted where the newly discovered evidence does not contradict the strongest evidence introduced against the defendant. (*People v. Delgado, supra,* 5 Cal.4th at p. 329; *People v. Martinez* (1984) 36 Cal.3d 816, 823.)

---

[4] Appellant argues that Detective Pierce rode in the police car with appellant to the police station. Officer Lincoln, however, testified that appellant was the only passenger and no one else was in the car.

*Romero Motion*

Appellant argues that the trial court abused its discretion in not striking the prior strike convictions. In ruling on a *Romero* motion (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497), the court considers the nature and circumstances of the present felony offense, defendant's prior serious and/or violent felony convictions, and defendant's background, character, and prospects. (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Appellant has an extensive criminal record that includes auto theft, burglary, assault and battery, and arson as a juvenile. While on probation, appellant was convicted in 1985 for attempted murder, forcible sodomy, first degree burglary, and a home-invasion robbery in which he sodomized a pregnant mother and cut her throat. The trial court found that the conviction was "one of the worst offenses I've ever seen in my life." Appellant was sentenced to 14-plus years state prison, was released on parole, and in 1994 was arrested and later convicted for residential burglary. Appellant was sentenced to eight years state prison, released on parole in 2000, and violated parole four times. In 2009, he was convicted for failing to register as a sex offender, a felony that could have resulted in a 25-year-to-life sentence due to his prior strikes. Appellant was granted five years probation with 365 days jail.

Appellant argues that the bomb threats and threat to kill a police officer was an aberration brought on by long term mental health issues. A psychologist reported that appellant's actions were deliberate and that appellant thought it "funny" and a "good idea" to harass the police. The report states that appellant has been angry and resentful of authority for much of his life, and had a desire to "get even" with the police when he made the calls.

Based on appellant's age, his history of violence, the prior commitments to the California Youth Authority and prison, and appellant's failed attempts at parole and probation, the trial court did not abuse its discretion in denying the *Romero* motion. (See e.g., *People v. Williams*, *supra,* 17 Cal. 4th at pp. 162-164; *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.) Once a career criminal commits the requisite number of

11

strikes, the circumstances must be "'extraordinary'" before he or she can be deemed to fall outside the spirit of the Three Strikes law. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) Appellant's criminal history and recidivism, marked by violent assaults and threats of violence, clearly shows that he cannot refrain from criminal activity. (Se e.g., *People v. Strong* (2001) 87 Cal.App.4th 328, 340.) The trial court did not abuse its discretion in denying the motion to strike appellant's prior strike convictions. (*People v. Carmony, supra,* 33 Cal.4th at p. 378.)

*Court Security Fee*

The Attorney General correctly argues that the trial court erred in imposing a $40 court security fee. Section 1465.8 requires that a $40 court security fee be imposed for each conviction. (*People v. Schoeb* (2005) 132 Cal.App.4th 861, 865; *People v. Crittle* (2007) 154 Cal.App.4th 368, 370-371.) The abstract of judgment is amended to reflect that a $120 court security fee was imposed pursuant to section 1465.8 (i.e., $40 fee on each count). The judgment, as amended, is affirmed.

The clerk of the superior court is directed to amend the June 27, 2013 minute order and abstract of judgment to reflect the imposition of a $120 court security fee (§ 1465.8, subd. (a)(1)). and to forward a certified copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation.

The judgment, as modified, is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

John Trice, Judge

Superior Court County of San Luis Obispo

_____

John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Rama R. Maline and David F. Glassman Deputy Attorneys General, for Plaintiff and Respondent.