Filed 12/16/14  P. v. Estrada CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>ALFREDO R. ESTRADA,<br><br>　　　　Defendant and Appellant. | A137052<br><br>(Alameda County<br>　Super. Ct. No. H50006) |

　　　　This is an appeal from judgment after a jury convicted appellant Alfredo R. Estrada of one count of committing a lewd act against a child under the age of 14 and one count of sexual penetration by force.  Appellant challenges the judgment on several grounds, including prosecutorial misconduct, failure to establish the corpus delicti of a prior uncharged sexual offense, and abuse of discretion in sentencing.  For reasons set forth below, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

　　　　On January 14, 2011, an information was filed in Alameda County charging appellant with committing: a lewd act upon Jane Doe, a child under the age of 14 (count 1) (Pen. Code, § 288, subd. (a));[1] sexual penetration by force upon Doe (count 2) (§ 289, subd. (a)(1)); and aggravated sexual assault by rape upon a child (count 3) (§§ 269, subd. (a)(1), 261, subd. (a)(6)).

---

[1]　　　　Unless otherwise stated, all statutory citations herein are to the Penal Code.

## I.    Appellant's Trial.

Trial began May 16, 2012, during which the following evidence was presented. Doe was born in March 1995. Doe was raised by her grandmother until the age of 12, at which time she moved into the East Bay home of her mother, appellant (her mother's husband), and her three step-brothers. When Doe was 12 years-old, appellant committed the lewd act of touching her vagina while she was seated on the living room couch. After rubbing Doe's stomach, appellant first touched her vagina on top of her clothing and then underneath it. Doe felt appellant's finger enter her vagina, but she did not say anything or otherwise express her fear because she had seen appellant hit her mother and did not want the same to happen to her. Instead, she continued to look at the wall, not knowing what would happen next. Doe recalled feeling scared and "nasty," and experiencing pain and pressure when appellant's finger entered her vagina.[2]

After this incident on the couch, appellant told Doe in a demanding voice to go into the bathroom. Appellant followed her into the bathroom, locked the door, and told her in the same demanding voice to take off her pants and underwear. Doe obeyed and then sat on the toilet, at which point appellant removed his own pants and underwear and spread Doe's legs by pushing her knees apart. Doe closed her eyes and felt appellant put his penis in her vagina as his body went back and forth. She felt something going into and out of her vagina for about two minutes. Doe believed it was appellant's penis rather than his finger because it felt different than when he had earlier placed his finger in her vagina while they were sitting on the couch. Also, when appellant first put his penis into her vagina, she felt a sharp pain further inside her than where the finger had been. She tried unsuccessfully to push him away. When appellant finally stopped, Doe's vagina felt wet and gooey. When she opened her eyes, appellant's back was to her and he was already dressed. Appellant then left the bathroom, closing the door behind him.

After appellant left, Doe wiped her vagina with toilet paper and put back on her clothes. She then sat in the bathroom crying, feeling scared and dirty, before she finally

---

[2]    During this incident, Doe was home from school with a stomach ache and her siblings and cousins were playing upstairs. Doe's mother was running an errand.

left the bathroom to go upstairs, still crying. Along the way, she saw appellant seated on the couch, who told her calmly not to tell anyone what had happened. Doe obeyed his order for several years, until she eventually told her friend Mayra that she had been raped by her stepfather. About a year and a half later, when she was age 14, she told another friend, Tina, that she had been raped. Doe told no adults, however, including her mother, because she was scared about what would happen.

About one year after Doe had told Tina about the rape, when Doe was 15, some friends separately told her that Tina had been telling others that Doe had been molested. Doe was angry, and made a plan to fight Tina at school the next day. However, school officials intervened in this plan, at which time it was revealed (by Tina) that Doe had been raped by her stepfather.

The next day, the police called Doe. With Doe's permission, police officers picked her up from her grandmother's house and took her to the Child Abuse Listening, Interviewing and Coordination Center (CALICO). Although reluctant, Doe agreed to a CALICO interview. Afterward, Doe went to the police station, where appellant was also present.

Appellant agreed to be interviewed by police. During this interview, which was recorded by audio and video, appellant admitted touching Doe's vagina while she was sitting on the couch at age 12.[3] More specifically, appellant admitted touching Doe's vagina with his fingers under her clothing for about two or three minutes. He stopped, however, after noticing that Doe was scared and upset. According to appellant, it was "carnal desire" that led to his actions.

Appellant also acknowledged touching Doe again in the bathroom a few moments later. Appellant stated that Doe went to the bathroom, and he followed there. Appellant

---

[3] Appellant had already confessed to his wife (Doe's mother) that he had touched Doe, while explaining to her why he believed Doe had recently been acting out. This occurred about six months after the incident. Doe's mother reacted by trying to punch him and ordering him out of the room. Doe's mother later took Doe to visit their church leaders, but they were not home. Appellant, in turn, went to speak with their preacher about the incident. The incident was not, however, reported to the police.

then closed and locked the door, and told Doe to remove her pants and underwear. Once she complied, appellant caressed and massaged her labia. Appellant acknowledged that his penis became erect and that his carnal desire for Doe returned, but denied raping her or penetrating her with his finger.[4] In fact, appellant reacted visibly when advised that Doe had said he put his penis into her vagina. Appellant insisted that he only touched Doe's labia and kissed her stomach, but did nothing further because he knew she did not want to.

Appellant also admitted engaging in a prior act of sexual molestation. Appellant told the officers that, when he was about 16 years-old and living in Mexico, he touched the vagina of his eight year-old niece under her clothing.

## II.    The Verdict, Sentencing, and Appeal.

On May 24, 2012, the jury found appellant guilty of counts 1 and 2 (a lewd act upon a child under age 14 and sexual penetration by force), and not guilty of count 3 (aggravated sexual assault by rape upon a child).

On October 26, 2012, appellant was sentenced to a total prison term of 14 years, consisting of the midterm of six years on count one, to be served consecutively with the upper term of eight years on count two. This appeal followed.

### DISCUSSION

Appellant raises four arguments on appeal: (1) the trial court improperly admitted evidence relating to his commission of a prior uncharged sexual offense pursuant to Evidence Code section 1108 despite the prosecutor's failure to establish the corpus delicti of the prior offense; (2) Evidence Code section 1108 is unconstitutional; (3) the prosecutor engaged in prejudicial misconduct by making certain inflammatory statements during closing arguments; and (4) the trial court failed to properly exercise its discretion when sentencing him to the midterm on count one and a consecutive aggravated term on count two. We address each issue in turn.

---

[4]    His carnal desire included a wish to have a "relationship" with her.

4

**I.      The Corpus Delicti of Appellant's Alleged Prior Sexual Offense.**

Appellant first argues that the trial court prejudicially erred by admitting into evidence his extrajudicial statements acknowledging having sexually abused an eight year-old girl many years ago when he was a 16 year-old living in Mexico, an offense for which he was never charged.  According to appellant, his extrajudicial admission was not admissible in court given the prosecutor's failure to establish the "corpus delicti" of his alleged prior act.

The California Supreme Court has explained the corpus delicti doctrine as follows: "In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself ─ i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause.  In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant.  [Citations.]" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169; see also *People v. Jones* (1998) 17 Cal.4th 279, 301.)  "[T]his rule is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened." (*People v. Alvarez, supra,* Cal.4th  at p. 1169.)[5]  Yet the quantum of evidence required to establish the corpus delicti of a crime is far below that required to convict a defendant of a crime.  Specifically, the evidence "is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible." (*People v. Alvarez*, *supra*, 27 Cal.4th at p. 1171.)

Here, appellant claims his conviction on count two must be set aside because the jury heard evidence that he committed another uncharged act of sexual molestation despite the absence of any evidence proving the corpus delicti of the crime.  The prosecutor, in turn, does not dispute there was no evidence aside from appellant's own extrajudicial admission permitting an inference that he committed the uncharged act.  However, the prosecution contends the lack of such evidence does not matter because the

---

[5]      "[I]nsofar as the corpus delicti rule restricts the admissibility of incriminatory extrajudicial statements by the accused, section 28(d) [of Article I of the California Constitution] abrogates it." (*People v. Alvarez*, *supra*, 27 Cal.4th at p. 1174.)

corpus delicti rule does not apply to evidence of uncharged prior acts. We agree with the prosecution that appellant's argument must be rejected.

As we have already explained, " ' "[t]he purpose of the corpus delicti rule is to satisfy the policy of the law that ' "one will not be falsely convicted, by his or her untested words alone, of a crime that never happened." ' (*People v. Miranda* (2008) 161 Cal.App.4th 98, 107 [73 Cal.Rptr.3d 759].)" (*People v. Davis* (2008) 168 Cal.App.4th 617, 634.) "Though mandated by no statute, and never deemed a constitutional guaranty, the rule requiring some independent proof of the corpus delicti has roots in the common law." (*People v. Alvarez, supra,* 27 Cal.4th at p. 1169.)

In light of this recognized purpose, courts have distinguished between evidence of the charged crime and evidence of a prior uncharged crime when considering the corpus delicti rule. However, with respect to uncharged prior crimes, several appellate courts have rejected the corpus delicti rule as a basis for excluding such evidence, at least during the guilt phase of trial. (E.g., *People v. Denis* (1990) 224 Cal.App.3d 563, 568-570 [*Denis*].) These courts acknowledge that, "[a]lthough the main purpose of the rule is to prevent a person from being *convicted* of 'a crime that never happened' (*People v. Alvarez, supra,* 27 Cal.4th at p. 1169), the California Supreme Court has held that in *capital* cases uncharged acts admitted at the *penalty phase* must comply with the corpus delicti rule. (*People v. Hamilton* (1963) 60 Cal.2d 105, 129 [32 Cal.Rptr.2d 383 P.2d 412] (*Hamilton*), overruled on other grounds in *People v. Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33] . . . ." (*People v. Davis, supra,* 168 Cal.App.4th at p. 634. Compare *People v. Valencia* (2008) 43 Cal.4th 268, 296 ["Although a jury does not *convict* the defendant of other crimes at a penalty phase [citation], given 'the overriding importance of "other crimes" evidence to the jury's life-or-death determination' [citation], th[e] [corpus delicti rule's] general purpose [of ensuring one will not be falsely convicted, by his or her untested words alone, of a crime that never happened] applies here"].) At the same time, several appellate courts have held that "[the corpus delicti rule] does not apply generally to uncharged conduct." (*People v. Davis, supra,* 168 Cal.App.4th at p. 633.)

6

Our appellate colleagues in the Third District took a close look at the *Denis* holding before making the following observations (which we find helpful to our discussion): "*Denis* concluded the California Supreme Court had only actually *applied* the rule in the penalty phase context. ([*Denis, supra*, 224 Cal.App.3d] at pp. 568-569.) 'In addition, both Wigmore and McCormick question the need for the corpus delicti rule itself. . . . We are, therefore, unwilling to expand the rule to cover evidence of uncharged conduct, offered for a limited purpose under Evidence Code section 1101, subdivision (b).' (*Id*. at p. 570, citations omitted.) [¶] We agree with *Denis*. (See *People v. Martinez* (1996) 51 Cal.App.4th 537, 543-545. . . . [approving *Denis*].) Since *Denis* was decided the California Supreme Court noted the point *Denis* makes, but has not resolved the question. (*People v. Horning* (2004) 34 Cal.4th 871, 899 . . . ; *People v. Clark* (1992) 3 Cal.4th 41, 124 . . . ["It is not clear that the corpus delicti rule applies to other crimes evidence … ."].) We conclude the issue is not foreclosed by precedent. (See also 1 Witkin & Epstein, Cal. Criminal Law, *supra*, Elements, § 46, p. 252; Simons, Cal. Evidence Manual (2008) § 6.21, p. 467.) [¶] We have surveyed the 'common law' to the extent it addresses this issue, and we have found no authority supporting [defendant's] position [that the corpus delicti rule is applicable to uncharged act evidence during the guilt phase] and ample authority against it." (*People v. Davis, supra*, 168 Cal.App.4th at pp. 636-637.)

While acknowledging the holding of *Denis*, appellant insists the court's limitation of the corpus delicti rule should not apply to uncharged *sexual* acts admitted pursuant to Evidence Code section 1108. Appellant reasons that evidence of uncharged *nonsexual* criminal acts is admitted only for limited purposes, such as to prove motive, opportunity, intent or identity. (Evid. Code, § 1101, subd. (b).) Evidence of uncharged *sexual* acts, to the contrary, is admitted for the broader purpose of proving the defendant's disposition to commit the charged sex offense. (Evid. Code, § 1108.) As such, appellant concludes, the holding of *Denis* should not extend beyond evidence admitted pursuant to Evidence Code section 1101 to evidence admitted pursuant to Evidence Code section 1108.

While appellant may be correct to distinguish evidence of uncharged sexual acts from evidence of other uncharged acts, the fact remains no published California appellate decision has ever applied the corpus delicti rule to evidence admitted pursuant to Evidence Code section 1108. And we are not at all certain valid grounds exist to do so here. First, as stated above, the purpose of this rule is to ensure a defendant is not falsely convicted, based on his or her words alone, of a crime that never occurred. Appellant offers no explanation as to how this purpose is implicated in his case. Appellant is not on trial for any sexual misconduct he admitted engaging in while living in Mexico as a minor; rather, he is on trial for the sexual misconduct he engaged in as an adult with his stepdaughter, Doe, two counts of which have been proved to this jury beyond a reasonable doubt with evidence apart from his own admissions regarding his abuse of Doe.

Moreover, as the prosecution points out, the jury in this case was instructed at length regarding the limitations imposed on its consideration of the evidence of appellant's prior uncharged sexual misconduct. Specifically, the jury was instructed that such evidence was not admissible to prove appellant actually committed the offenses charged in this case. Rather, it was admitted to show appellant's disposition to commit sexual abuse. Consistent with CALCRIM number 1191, the jury was admonished that: (1) it was permitted to consider this evidence only if the People proved by a preponderance of the evidence that appellant committed the uncharged act (and if this burden was not met, it must disregard the evidence); (2) if the jury decides appellant committed the uncharged act, the jury could, but was not required to, conclude from the evidence that appellant was disposed or inclined to commit sexual offenses; (3) and based on that decision, the jury could then conclude appellant was likely to and did commit the charged offenses; however, (4) the uncharged act was not sufficient by itself to prove appellant's guilt on any of the charges, which, in any event, must be proved beyond a reasonable doubt. These clear instructions regarding the limited use of evidence of appellant's prior act precluded the jury from convicting him without finding, beyond a reasonable doubt, that he committed the offenses charged in this case. As such, the evil

8

the corpus delicti rule was designed to protect against – to wit, false conviction for an alleged crime based on a defendant's words alone – does not appear to be implicated.

In any event, even were we to conclude the corpus delicti rule should have been applied in this case, we would nonetheless conclude that the admission of evidence of appellant's prior uncharged act caused him in no prejudice with respect to the jury's finding on count two. Indeed, the fact remains that appellant admitted touching Doe's vagina two separate times. Count two, in turn, involved his commission of penetration by force against Doe. The record reflects that Doe consistently testified that appellant penetrated her twice, on the couch to a lesser degree, and in the bathroom to a greater, more painful, degree. While Doe stated her belief that appellant raped her in the bathroom, she acknowledged that she did not actually see him insert his penis because her eyes were closed. She explained that she believed he may have raped her because the penetration felt more severe than it did on the couch. The jury's ability to parse this evidence relating to the charged sexual offenses, and by implication the uncharged sexual offense, is indicated by its decision on this record to acquit appellant of the rape charge named in count three. (See *People v. Mendibles* (1988) 199 Cal.App.3d 1277, 1312 [disapproved on other grounds by *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12] [noting, when affirming the denial of a motion for mistrial, that "[the fact] that defendant was acquitted of *any* of the offenses suggests the lack of prejudice and the jury's clear ability to consider each count on the evidence presented and nothing else".) Accordingly, on this record, there is no basis for finding a reasonable probability that, without admission of evidence of appellant's uncharged prior act of sexual misconduct, he would have obtained a more favorable verdict. (See *People v. Robertson* (1982) 33 Cal.3d 21, 42 [admission of evidence of prior uncharged acts was harmless as to the verdicts given the overwhelming evidence of guilt.)

## II. Constitutionality of Evidence Code Section 1108.

Appellant next argues that Evidence Code section 1108 is unconstitutional because "it jeopardizes the presumption of innocence and dilutes the standard of proof beyond a reasonable doubt and makes it likely that the jury will convict based propensity [sic]

rather than on the strength of the evidence of the charged crime." This argument is, of course, a nonstarter. The California Supreme Court, to which we must defer, has already decided this precise issue. (See *People v. Falsetta* (1999) 21 Cal.4th 903, 915; *People v. Reliford* (2003) 29 Cal.4th 1007.) Accordingly, we reject appellant's second argument without further analysis under the well-established principle of stare decisis. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## III.    Prosecutorial Misconduct.

Appellant also challenges as misconduct two lines of argument made by the prosecutor during the rebuttal stage of closing arguments. According to appellant, these instances of prosecutorial misconduct were prejudicial and violated his constitutional rights to due process and a fair trial. Before turning to the relevant law, we set forth in full the challenged arguments.

First, appellant claims the following italicized statements by the prosecutor constituted misconduct by injecting into trial the issues of his indigence and dependence on public aid for his defense:

"Coming forward and being honest is going to law enforcement, is stepping up, taking responsibility. *I am not the big, bad government. We're not out to get anybody. We're here to make sure justice is served.*

"*Last time I checked, my paycheck was written by the same – signed by the same person as [defense counsel's]. No one is out to get Mr. Estrada. His actions are why we are here today.*"

Second, appellant claims the following statements, referencing the number of times during these proceedings that Doe has told her version of what occurred on the day in question, constituted an improper attack on his right to trial:

"Ladies and gentlemen, when you are telling the truth, you don't have to worry about details. The first time Jane Doe was interviewed, she said the defendant touched me, penetrated me with his finger, raped me. At the preliminary hearing, she testified the defendant touched me, penetrated me with his finger, raped me. Here at trial you heard

10

her: The defendant touched me, penetrated me, raped me. How many times does she have to tell us before we listen to her?"

The legality of these prosecutorial remarks depends on the following well-established legal principles. " 'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the *federal* Constitution when they infect the trial with such " 'unfairness as to make the resulting conviction a denial of due process.' " [Citations.]) Under *state law,* a prosecutor who uses deceptive or reprehensible methods commits misconduct even when those actions do not result in a fundamentally unfair trial. [Citation.]' [Citations.]" (*People v. Salcido* (2008) 44 Cal.4th 93, 152; see also *People v. Samayoa* (1997) 15 Cal.4th 795, 841 [" ' "A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process" ' "].) When a claim of misconduct is based on the prosecutor's comments before the jury, " 'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' " [Citation.]' [Citation.]" (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1275.)

Appellant claims violations of his rights under both federal and state law based upon these allegations of prosecutorial misconduct. Putting aside the parties' ancillary dispute regarding whether appellant forfeited his right to assert this issue by failing to make specific and timely objections to the challenged lines of argument, we have no trouble concluding on this record that no actionable misconduct occurred.[6]

Turning first to the line of argument relating to appellant's representation by a public defender, the prosecutor's statements, considered in context, simply do not meet

---

[6] To preserve such a claim for appeal, a defendant generally is required to make a timely and specific objection to the prosecutor's remarks and to request an admonition to the jury to cure any harm. (*People v. Frye* (1998) 18 Cal.4th 894, 969; *People v. Hill* (1998) 17 Cal.4th 800, 820.) Otherwise, "the point is reviewable only if an admonition would not have cured the harm caused by the misconduct." (*People v. Gionis* (1995) 9 Cal.4th 1196, 1215.)

11

the stringent standard of "deceptive or reprehensible" conduct. Nor can we conclude there is a reasonable likelihood the jury misconstrued the argument as an attack on his indigence and dependence on public aid. Indeed, appellant's counsel introduced himself to the jury as "Joe Penrod, . . . a deputy public defender." This introduction, much like the prosecutor's comments, is simply an accurate description of defense counsel's identity, not an insidious remark on appellant's indigence. (See *People v. Carpenter* (1997) 15 Cal.4th 312, 396-397 ["At another point, the prosecutor mentioned that defense counsel was a 'public defender of some 12 years' experience . . . .' Defendant finds several insidious implications in the comment. It was, however, quite innocent. That defense counsel was the public defender was no secret; the prosecutor made no suggestion the jury should hold that against defendant"].) Appellant directs us to nothing in the record (aside from the comments themselves) indicating otherwise. Moreover, when considered in the context of the record as a whole, the prosecutor's comments are more reasonably construed as responsive to defense counsel's closing arguments that "[w]hat the police say in there should not be accepted by you as the truth, and that's because they lie in there all day . . . ." As such, we conclude the prosecutor's comments fell within the permissible bounds of argument and caused no undue prejudice to appellant. (See *People v. Zambrano* (2007) 41 Cal.4th 1082, 1169-1170 [rejecting prosecutorial misconduct claim where "there is no likelihood [the prosecutor's] biblical references diminished the jury's sense of responsibility" and, in any event, the fact that defense counsel "himself invoked religious principles is further evidence [defendant] suffered no unfair damage at the prosecutor's hands"].)

Further, with respect to the prosecutor's line of rebuttal argument regarding "how many times" Doe has retold the story of appellant's sexual abuse, the record makes amply clear its impetus. Specifically, defense counsel argued extensively in closing argument regarding purported inconsistencies in Doe's recollection of the events

underlying these charges.[7]  As such, the prosecutor had a valid, non-deceptive, non-reprehensible reason to respond to defense counsel's remarks by pointing out that Doe had in fact consistently described the basic nature of appellant's sexual offenses at several points during the course of his arrest and trial.  (See *People v. Friend* (2009) 47

[7]     We here set forth just one portion of defense counsel's lengthy argument in this regard:  "Now, what she testifies to about what happened in that bathroom and on that couch is all that matters, and it is inconsistent, it is incomplete, and it is impossible in some respects.  First, I'll talk about the inconsistencies.  She indicated that — well, at CALICO and at preliminary hearing, she didn't talk about pain at all.  And here she does.  I've talked about the stomachache versus no stomachache.  Her clothing — description of what she's wearing changes completely in each different account.  From no clothing at all at CALICO to a T-shirt and either jeans or sweatpants at preliminary hearing to jeans or a shirt that's either long or short sleeves here.  She changes the words of her questions to Mr. Estrada.  Mr. Estrada's questions on the couch; she changes what he's talking, when he's talking and how she answers it.  She says she was sitting there sitting at the wall where previously she's nodding her head.  She changes how she characterizes Mr. Estrada's voice from angry at CALICO to demanding here to he just told me at preliminary hearing.  She never said she was afraid at CALICO.  Now, that's probably an oversight.  But she starts talking about fear once she's talked to the district attorney, you know, the elements of defenses.

"She says she's afraid when he reaches down.  At preliminary hearing she says uncomfortable.  The act itself is scary.  She says here that she's scared and she felt nasty when he touched her.  At CALICO she said it felt weird and it made her stomach hurt more.  Same thing in the bathroom.  She says she's scared versus in shock.  She did not say scared before at CALICO.  At CALICO she says on the couch when he touched her, it was like mostly outside my vagina, and at that point we established she meant area, and next thing she said to clarify it was, like, he was barely touching me.  Here it's a little bit of a finger.  She told us that she sat down on the toilet in the bathroom and then removed her clothes.  At preliminary hearing she said she removed her clothes and sat down.  That's changing the order of events in the bathroom.  She told us she saw Mr. Estrada take his clothes off.  She didn't say that at preliminary hearing.  She didn't say that at CALICO.  She said she simply heard something like a zipper.  She was averting her gaze.  She says that his hands are on the toilet, but yet she doesn't feel his arms at all on her body.  At CALICO she says his hands are on the wall the whole time, which seems not possible with that storage rack there.  She told us that after it was over, she wiped herself off, and at preliminary hearing under sworn testimony she said she didn't do that.  She didn't tell us she was crying.  CALICO she says she's crying the whole time.  She didn't remember what she said at preliminary hearing."

Cal.4th 1, 32 ["The prosecutor's remarks here were founded on evidence in the record and fell within the permissible bounds of argument"].)

Accordingly, we conclude appellant's prosecutorial misconduct claims provide no basis for reversal. Simply put, none of the statements challenged as prosecutorial misconduct, considered collectively or in isolation, rendered appellant's trial fundamentally unfair, or constituted a deceptive or reprehensible method of persuading the jury such that it was reasonably likely to have been misled.

## IV.   Sentencing Appellant to an Aggravated Consecutive Term on Count Two.

Appellant's final argument is that the trial court failed to understand and apply the relevant facts when sentencing him to an aggravated consecutive term on count two, such that his sentence was an abuse of discretion. The following background is relevant.

At the sentencing hearing, the trial court stated its intent to order appellant to serve a total prison term of 14 years, consisting of a six-year midterm on count one and an eight-year aggravated, consecutive term on count two. The trial court reasoned with respect to the aggravated consecutive term on count two that appellant had made a separate decision after committing the lewd act on Doe on the couch (count one) to have Doe move to the bathroom, where he then committed the penetration offense (count two). (See § 667.6.)[8] Specifically, the trial court provided the following explanation on the record:

---

[8]   Section 667.6 provides in relevant part:

"(c) In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion. A term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e). If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to that term shall not be merged therein but shall commence at the time the person otherwise would have been released from prison.

14

"[Defendant] began to touch her inappropriately outside of her clothing and then somewhat under her clothing while they were sitting on the couch in the living room. [¶] Thereafter which led to the 289(a) conviction he actually made a separate decision to move to a different part[,] to a more private part of the house. There were other children present while this was going on, which in my view is also egregious. But I think he was clearly aware that he needed to be in a more private space so that if the other children who are in the house were to come downstairs they wouldn't be noticed. This was a separate decision that escalated his conduct but I think further violated the victim in a way that the harm to her cannot be measured."

In challenging this exercise of discretion, appellant argues the trial court misconstrued the facts that formed the basis for his conviction on count two, penetration by force. In particular, while the court's stated reason for imposing the aggravated consecutive term was appellant's purported "separate decision" to move with Doe into the bathroom, where his misconduct "escalated," appellant contends that, in fact, "[t]he penetration on the couch was the basis for the penetration count, not any conduct in the bathroom of which [he] was acquitted."

However, as the prosecution notes, appellant did not raise this challenge to the trial court's sentencing decision below. Rather, at the sentencing hearing, defense counsel challenged the court's decision to impose the upper term, arguing, among other

"(d) A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions.

"In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions.

"The term shall be served consecutively to any other term of imprisonment and shall commence from the time the person otherwise would have been released from imprisonment. . . ." (§ 667.6, subds. (c), (d).)

things, that the court's reliance on great bodily injury or serious violence as an aggravating factor would not be appropriate, and that the court should consider several relevant mitigating facts weighing in favor of leniency, such as his lack of any prior criminal record. However, at no point did defense counsel object to the trial court's reliance on appellant's "separate decision" to move into the bathroom, where his misconduct "escalated," to justify imposition of full consecutive sentences pursuant to section 667.6.

Appellant implicitly concedes his forfeiture of the right to appeal the trial court's imposition of the aggravated consecutive term on count two. Despite the People's detailed briefing of this issue in the Respondent's Brief, appellant wholly fails to respond in his Reply Brief. In any event, we agree with the People. California law is well-established that "the right to challenge a criminal sentence on appeal is not unrestricted. In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have *required* parties to raise certain issues at the time of sentencing. In such cases, lack of a timely and meaningful objection forfeits or waives the claim. [Citations.] These principles are invoked as a matter of policy to ensure the fair and orderly administration of justice. (Cf. Evid. Code, §§ 353, 354 [preserving evidentiary claims].)" (*People v. Scott* (1994) 9 Cal.4th 331, 351.) Among the claims required to be brought to the trial court's attention at the time of sentencing to avoid forfeiture are those raised herein – to wit, "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*People v. Scott, supra,* 9 Cal.4th at p. 353; see also *People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 725 [criminal defendant cannot argue for the first time on appeal that the court erred by imposing an aggravated sentence based on erroneous or otherwise flawed information in a probation report].)

16

As the California Supreme Court has explained, "the purpose for requiring the court to orally announce its reasons at sentencing is clear.  The requirement encourages the careful exercise of discretion and decreases the risk of error.  In the event ambiguities, errors, or omissions appear in the court's reasoning, the parties can seek an immediate clarification or change.  The statement of reasons also supplies the reviewing court with information needed to assess the merits of any sentencing claim and the prejudicial effect of any error." (*People v. Scott, supra,* 9 Cal.4th at p. 351.)  And while "the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention. As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them." (*Id*. at p. 353.)

Accordingly, based on this California Supreme Court authority, we conclude appellant's final contention fails on forfeiture grounds.

## DISPOSITION

The judgment is affirmed.

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Siggins, J.